# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| RYAN M. SAPP, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Civil No. 3:13-CV-0512 |
| | )    Judge Aleta A. Trauger |
| WESTERN EXPRESS, INC., | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM & ORDER

Pending before the court are two motions brought by Plaintiff Ryan M. Sapp ("Sapp") in the wake of the court's grant of summary judgment to defendant Western Express, Inc. ("Western"). Sapp has filed a Motion to Alter, Amend or Set Aside ("Motion to Alter") (Docket No. 34) and a Motion for Additional Time to Supplement Plaintiff's Memorandum of Law in Support of his Motion to Alter ("Motion for Additional Time") (Docket No. 36). Western filed a joint Response to both motions. (Docket No. 39.) Sapp replied by filing a Supplement of medical records (Docket No. 40). At the request of the court, Western filed a Supplemental Response to the pending motions (Docket No. 42). For reasons discussed herein, the pending motions will be denied.

## BACKGROUND

The court incorporates herein the thorough procedural and factual background contained in the December 23, 2014 summary judgment Memorandum ("Dec. 23 Mem."). (*See* Docket No. 31.)

Sapp filed the Motion to Alter on January 20, 2015. (Docket No. 34.) Plaintiff

1

concurrently filed the Motion for Additional Time, seeking an extension of time to locate Sapp's medical records. (Docket No. 36.) The court ordered Western to respond to the motions by February 6, 2015. (Docket No. 37.) On February 5, 2015, without permission of the court, Sapp filed a Supplement containing medical records. (Docket No. 40.) The court ordered Western to file a response discussing its view of the impact, if any, of the Supplement upon the Motion to Alter. (Docket No. 41.) Western filed its Supplemental Response on February 25, 2015. (Docket No. 42.)

## ANALYSIS

### I. Legal Standard

Under Rule 59, a court may alter or amend a judgment based on: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010); *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007); *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)*; GenCorp, Inc. v. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). However, a motion under Rule 59(e) is not a vehicle for presenting new legal arguments that could have been raised before a judgment was issued. *Roger Miller Music*, 477 F.3d at 395; *see also Leisure Caviar*, 616 F.3d at 616 (noting movant "cannot use a Rule 59 motion to raise arguments which could, and should, have been made before judgment issued"); *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("A motion under Rule 59(e) is not an opportunity to reargue a case."). "The grant or denial of a Rule 59(e) motion is within the informed discretion of the district court, reversible only for abuse." *Scotts Co. v. Central Garden & Pet Co.*, 403 F.3d 781, 788 (6th Cir.

2005) (citation and internal quotation marks omitted).

While the Sixth Circuit has not ruled on the exact definition of "clear error," it has made clear that it is an exacting standard and that a successful Rule 59(e) motion must "clearly establish a manifest error of law." *Roger Miller Music*, 477 F.3d at 395. As one court has described it, "[i]n essence, a [prior] judgment must be 'dead wrong' to qualify as being clearly erroneous." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 809-810 (N.D. Ohio 2010). To constitute "newly discovered evidence," the evidence must have been previously unavailable. *GenCorp*, 178 F.3d at 834 (citing Charles A. Wright, 11 FEDERAL PRACTICE AND PROCEDURE § 2810.1 at 127–28 (1995)). It is not evidence that was available to the movant before the judgment in question issued, but which the movant did not discover until post judgment. *See id.*; *see also Gritton v. Disponett*, 332 F. App'x 232, 239 (6th Cir. 2009). Finally, although the "manifest injustice" ground for a Rule 59(e) motion appears to be a catch-all provision, it is not meant to allow a disappointed litigant to attempt to persuade the court to change its mind. *See, e.g., GenCorp*, 178 F.3d at 834. Instead, whether manifest injustice would result from denying a Rule 59(e) motion is, by definition, a fact-specific analysis that falls squarely within the discretionary authority of the court. *Id.* In exercising this discretion, the court should weigh the importance of bringing litigation to a firm conclusion and the need to render fair and just rulings. *Id.*

## II. Analysis

Sapp first argues that the court incorrectly concluded that he was not "regarded as" disabled. Sapp argues that the court applied an improper standard because it stated that a plaintiff "must show that the employer regarded the individual as disabled within the meaning of the

3

ADA," and cited to *Ross v. Campbell Soup*, 237 F.3d 701, 709 (6th Cir. 2001). Sapp contends that the court failed to apply the updated ADA Amendments Act of 2008 ("ADAAA"), *see* Dec. 23 Mem. at 12-14, which modified the "regarded as" standard to only require that Sapp establish that Western took action based on a perceived impairment, regardless of whether the employer thought the impairment was substantially limiting. *See* 42 U.S.C. § 12102(3)(A). Sapp further argues that he met this standard by demonstrating three facts: (1) Western advised him to avoid Grenier, (2) Western agreed to transfer him back to the night shift, and (3) Western terminated him. Sapp claims these facts establish that Western "took actions based on his panic attacks and anxiety." Motion to Alter at p. 4.

This argument is without merit. As an initial matter, the reference to the ADA in the passage from the court's opinion was intended to refer to the ADA as currently in existence (*i.e.*, as amended by the ADAAA). The citation to *Ross* was for nothing more than the general proposition that it obviously supports. The court considered and applied the post-ADAAA standards in its summary judgment decision, and discussed the impact of the ADAAA upon governing standards. *See* Dec. 23 Mem. at pp. 12-15. Sapp's argument is merely a repackaging of his argument at summary judgment on this point; such is not the proper purpose of a Rule 59(e) motion. To be clear, at most the evidence shows that Sapp and Grenier clashed in the workplace. The fact that Western employees told Sapp to avoid stressful situations with Grenier does not create a triable issue of fact for summary judgment as to whether Sapp was "regarded as" disabled. Nor does the fact that Western agreed to Sapp's own request for a transfer to the night shift, which Sapp preferred over the more stressful day shift under Grenier. Nor does the fact that Sapp was terminated by a supervisor (Easterday) who had no knowledge whatsoever that

4

Sapp claimed to have any medical issues. The court finds no manifest error of law as to its summary judgment ruling as to whether Sapp was "regarded as" disabled.

Next, Sapp makes a one-paragraph argument concerning the court's conclusion that insufficient evidence of any actual disability existed to survive summary judgment. Sapp contends that, because the court observed that (1) certain Western executives knew Sapp took medication for an anxiety disorder and was especially troubled by stressful situations, (2) Grenier on occasion asked Sapp why he was jittery, wound up, or nervous, and (3) Western executives agreed to return Sapp to the night shift after his conflicts with Grenier, there was sufficient evidence to establish a triable issue of fact as to whether Sapp was disabled under the ADA. The discussion to which Sapp refers, however, is contained in the court's examination of whether Sapp was "regarded as" disabled by Western. Sapp does not address the court's lengthy and well-grounded analysis and conclusions as to why Sapp was not "disabled" under the ADA. Sapp offers one additional basis for the court to reconsider – Sapp highlights the fact that Grenier testified that he did not remember having a conversation with Sapp in which Sapp purportedly told Grenier that he suffered from anxiety. Even if taken in the light most favorable to Sapp, this does not create an issue of fact as to whether Sapp was disabled under the ADA; at most, it creates an issue of fact as to whether Grenier, who had no decision-making authority over Sapp's termination, was aware that Sapp had anxiety. In sum, the court finds no manifest error of law as to its summary judgment ruling on whether Sapp was disabled under the ADA.

Finally, Sapp requests that the court consider certain evidence not presented during summary judgment motion practice. First, Sapp requests that the court consider the transcripts of the depositions of Kim Sapp and Michael Sapp, the plaintiff's parents. These depositions were taken on October 14, 2014, but the transcripts were not acquired by the plaintiff's counsel until

5

December 31, 2014. Sapp suggests that, because he believed that one of his legal arguments was sufficient to prevail (*i.e.*, "regarded as" disabled), he did not find it to be necessary to procure the transcripts in a timely manner to support another of those arguments (*i.e.*, "disabled").[1] After losing at summary judgment, Sapp apparently rushed to obtain the transcripts for use as corroborative evidence of Sapp's actual disability.

Western responds that the transcripts at issue were available well before the December 23, 2014 judgment at issue. Specifically, Western avers that it received its requested copies of the deposition transcripts on November 16, 2014, after requesting them on October 14, 2014. Western argues that the same opportunity was available to Sapp.

The court agrees with Western. The deposition transcripts are not "newly discovered evidence" as contemplated by Rule 59(e). Sapp had the opportunity to secure and introduce the transcripts well prior to the court's summary judgment ruling but, for whatever unexplained reason, did not do so. Claiming to not know the importance of the transcripts does not transform their availability. Sapp's counsel participated in the depositions at issue, and he cannot reasonably contend that he was not aware of the evidence that arose from them. The transcripts were available before the judgment. It is now too late to introduce them. *See, e.g., Gritton*, 332 F. App'x at 239 (finding witness statements submitted post judgment could have been discovered prejudgment upon diligent investigation were not "newly discovered evidence").

Second, Sapp requests that the court consider sixty-two pages of medical records of three physicians who treated Sapp in the past. These records, despite being filed on the docket without permission of the court, are likewise inappropriate because they are clearly not "newly

---

[1] Despite a passing reference to "earlier diligent attempts" to obtain the transcripts, Sapp provides no explanation of any such activities.

discovered evidence." This matter was filed nearly two years ago. During discovery, in response to Defendant's Interrogatory No. 6, Sapp identified his medical providers to Western. The meaning of this is clear: Sapp knew exactly where to go to obtain his medical records. Despite this, for approximately 20 months, Sapp did not obtain any medical records – even when a summary judgment motion was filed asserting that Sapp was not disabled. Only after losing at summary judgment, in part on the grounds that he had adduced no medical evidence of a disability whatsoever, did Sapp for the first time request additional time to supplement the Motion to Alter with his medical records because his counsel "had been unable to retrieve those records to date despite diligent efforts." Motion to Alter at p. 8. The Motion to Alter provided no explanation to as what "diligent efforts" were purportedly undertaken during the prior twenty months. It simply stated that, "[u]pon receipt of the Court Order on December 23, 2014, during the holiday season, Plaintiff immediately requested his medical records" and expected to receive them within two weeks. In short, it appears that it was not until Western prevailed at summary judgment that Sapp's counsel was able to make a persuasive request for Sapp's medical records. However, those records are not new evidence. They are for prior years and have presumably existed in files accessible to Sapp for all of that time. They were discoverable to Sapp prior to the judgment, and Sapp has not made the key showing that the records were unavailable before now. Accordingly, the court will not accept or consider the additional medical records submitted by Sapp.

Finally, the court finds no manifest injustice in the summary judgment decision. Sapp has not identified any clear errors of law or newly discovered evidence. The court has reviewed the December 23, 2014 summary judgment ruling carefully and concluded that it is fair and just.

Nearly four months later, it is important to bring this matter to a final conclusion. Accordingly, the Motion to Alter will be denied.

## **CONCLUSION**

For these reasons, the plaintiff's Motion to Alter (Docket No. 34) is **DENIED**. The plaintiff's Motion for an Extension of Time (Docket No. 36) is **DENIED AS MOOT**.

Enter this 8th day of April 2015.

_____
ALETA A. TRAUGER
United States District Judge